UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| KADEN MCNAMARA on Behalf of Himself and Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>BOAT TOWN, INC., CLAYTON RAVEN, and CLAY RAVEN,<br><br>Defendants. | §§§§§§§§§§§§§ CIVIL ACTION NO. 1:24-cv-869-DAE |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Boat Town, Inc., Clayton Raven, and Clay Raven, (collectively "Boat Town" or the "Company") respectfully request this Court to grant their Motion for Summary Judgment on all claims asserted by Plaintiff under the Fair Labor Standard Act ("FLSA").[1]

**I.   STATEMENT OF UNDISPUTED MATERIAL FACTS**

Clayton and Clay Raven are owners and managers of Boat Town, Inc., a family-owned small business that has sold, repaired, and serviced boats in the Austin, Texas, area for more than sixty years.[2] Boat Town's business thrives when one might expect: during the spring and summer when people are making plans to be on the lake. But after Labor Day, when students are back in school, Boat Town's business slows dramatically.[3]

**A.   McNamara's Hiring and Accident**

In February 2022, in anticipation of the upcoming season, Boat Town hired the plaintiff, Kaden McNamara, as a Boat Delivery Captain at its Lamar location in Austin, Texas.[4]

---

[1] Plaintiff alleged this matter as a collective action but never sought certification and never opted in to his own lawsuit. Therefore, there is no collective action.
[2] App., Ex. A, Raven Dec. ¶ 3.
[3] Raven Dec. ¶ 3.
[4] Raven Dec. ¶ 4.

Unfortunately, within months of starting his work for Boat Town, Plaintiff was involved in an on-the-job accident. Specifically, in May 2022, while driving a boat for the Company, McNamara drove a boat under an awning and caused almost $56,000 in damage.[5] Nevertheless, McNamara received no formal disciplinary action for his plainly negligent action.[6] Indeed, as a family-owned small business, writing people up is just not something Boat Town does.[7]

### B. Boat Town Quickly Resolves McNamara's Internal Complaint

More than a year later, on or about June 6, 2023, McNamara informed Boat Town that he believed the Company had been incorrectly calculating his overtime pay.[8] Though initially skeptical, Boat Town investigated McNamara's allegation and quickly realized that he was correct.[9]

That same day, Boat Town acknowledged the error to McNamara[10] and assured him that they would make it right.[11] Boat Town corrected its method of calculating overtime,[12] and over the next two weeks, it worked with McNamara to determine how much he was owed.[13] On June 27, 2023, Boat Town paid McNamara the backpay *and* liquidated damages to which he was entitled.[14] He was even paid the backpay and liquidated damages at his then-existing wage rate,

---

[5] App., Ex. B, Pl.'s Dep. 50:7–51:12; App., Ex. D, Boat Town Dep. 22:6–11; Raven Dec. ¶ 4.
[6] Pl.'s Dep. 51:8–12.
[7] Raven Dec. ¶ 4.
[8] Pl.'s Dep. 55:4–9.
[9] Pl.'s Dep. 56:12–16; App., Ex. C, Shook Dep. 23:15–17, 34:18–35:1, 35:24–36:6, 69:1–6.
[10] Pl.'s Dep. 56:10–21.
[11] Raven Dec. ¶ 6.
[12] Pl.'s Dep. 65:22–66:4; Shook Dep. 55:4–8.
[13] App., Exs. F, G.
[14] Pl.'s Dep. 62:21–63:2 ("[T]he issue was taken care of with me."); App., Exs. F, G. McNamara initially claimed he was owed 60.223 hours. This amount consisted of (1) his unpaid overtime hours (13.593); (2) time McNamara spent off the clock to calculate his unpaid overtime hours (6.37); (3) other time unaccounted for on his timesheet (23.26 hours); and (4) two paid days off (17 hours). He then discovered he had been paid those two days off, bringing his total down to 42.223 hours. The time spent calculating his unpaid overtime hours was paid on his subsequent paycheck, bringing his payout down to 36.853.

After another slight adjustment, he agreed that he was owed pay for 35.463 hours. This time was paid out at his regular wage rate of $24 per hour, equating to the $851.11 payout (before taxes) that he received on June 27.

which was greater than his wages when the overtime was worked. In other words, the Company paid McNamara more than he was actually owed under the FLSA. Consequently, McNamara acknowledged that he had received all the compensation to which he was entitled.[15]

### C. WHD Investigation and End-of-Season Layoffs

Around the time McNamara reported his internal complaint, he allegedly began discussing the overtime pay issue with other employees.[16] On or about August 30, 2023, more than two months after Boat Town resolved McNamara's complaint, Boat Town received an email from an investigator with the Department of Labor's Wage and Hour Division (WHD).[17] By then, Boat Town was already far along in the process of proactively recalculating overtime for the rest of its affected employees.[18] A week later, on September 7, the investigator visited Boat Town's Lamar location, where McNamara worked, to interview witnesses and review a collection of standard payroll documents.[19] No one at Boat Town, certainly no managers or supervisors, including the individual Defendants, knew who had contacted the Department of Labor,[20] and—consistent with WHD policy—the investigator never informed Boat Town whether the investigation was triggered by a complaint or was simply a routine audit.[21]

On September 15, 2023, with boating season ending and a downturn in business, Boat Town laid off four employees, including McNamara.[22] McNamara's selection was based on his

---

Indeed, McNamara had already been paid his regular rate for those "unpaid overtime" hours. He was not paid the extra "half" of the "time-and-a-half" he should have been paid for those hours, an extra $12 per hour. So, when Boat Town paid out those hours on out at his regular rate of $24, McNamara ultimately received double pay for those overtime hours, meaning he received his backpay and liquidated damages.

[15] App., Ex. A-1.
[16] Pl.'s Dep. 64:1–25, 73:14–74:1, 81:23–82:5.
[17] App., Ex. H.
[18] Shook Dep. 48:15–21.
[19] Raven Dec. ¶ 8.
[20] Shook Dep. 47:7–10, 49:1–9, 67:25–68:8.
[21] Raven Dec. ¶ 8.
[22] Pl.'s Dep. 80:23–81:2; Shook Dep. 62:12–19; Raven Dec. ¶ 9.

lack of seniority, his costly accident, and his reputation for poor performance.[23] Notably, none of the employees who participated in the WHD visit on September 7 were laid off.[24] And during that investigation, under Department of Labor supervision, Boat Town paid all employees affected by its incorrect overtime calculations the backpay and liquidated damages to which they were entitled.[25] Like McNamara, each employee also signed an acknowledgement that they had been paid all wages due when their checks were delivered to them personally by Boat Town management with an apology for the mistake.[26]

Not until McNamara filed this action did Boat Town learn that he—apparently in the mere hours between his internal complaint and Boat Town's promise to fix the problem—had complained to the Department of Labor, which McNamara now claims was the reason for his discharge.[27]

## II.    ARGUMENT

### A.    Standard of Review

Federal Rules of Civil Procedure 56 mandates that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] A material fact is a fact that is identified by applicable substantive law as critical to the outcome of the suit.[29]  To be genuine, the dispute regarding a material fact must be supported by evidence such that a reasonable jury could resolve the issue in favor of either party.[30]  When a defendant moves for summary judgment on a plaintiff's causes of

---

[23] Pl.'s Dep. 78:2–10, 79:7–10; Raven Dec. ¶ 9.
[24] Raven Dec. ¶ 9.
[25] Shook Dep. 55:15–56:2, 56:20–57:20, 58:11–16.
[26] Shook Dep. 59:1–8.
[27] Raven Dec. ¶ 10.
[28] FED. R. CIV. P. 56(a).
[29] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.,* 271 F.3d 624, 626 (5th Cir. 2001).
[30] *See Royal v. CCC & R Tres Arboles, L.L.C.,* 736 F.3d 396, 400 (5th Cir. 2013).

action, it needs only to point to the absence of evidence supporting one or more elements of the plaintiff's claims.[31]

Once the movant meets its burden of showing that no genuine dispute of material fact exists, the burden shifts to the non-movant to prove with affirmative evidence "specific facts showing that there is a genuine issue for trial."[32] To meet this burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[33] In other words, the non-movant must provide significant probative evidence that would enable a jury to return a verdict in the non-movant's favor.[34] A plaintiff's burden is not satisfied by unsubstantiated assertions, unsupported speculation, or mere allegations.[35] In other words, in making its ruling the court must draw all reasonable inferences in the nonmovant's favor, but it must also disregard "conclusory allegations, speculation, and unsubstantiated assertions."[36]

In ruling on this motion, the Court must address two issues:

1. **Unpaid Overtime Settlement.** Can an employee recover damages under the FLSA after the employer paid him his unpaid overtime and liquidated damages upon learning of the issue and the plaintiff signed an acknowledgement that to that effect?

2. **Retaliation.** Can an employee maintain a retaliation claim under the FLSA relying on timing alone where is his only evidence is that he was laid off at the end of the employer's busy season, which coincided with a Department of Labor visit (the basis for which was not disclosed to the employee), and remained employed for three months after his internal complaint?

As demonstrated below, the answer to both these questions is that the employee cannot prevail on either claim.

---

[31] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301-02 (5th Cir. 2020).
[32] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).
[33] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).
[34] *Anderson*, 477 U.S. at 256-57.
[35] *Id.* at 248.
[36] *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002).

### B. McNamara's wage claim fails because he acknowledged that he was paid for all wages and overtime, as did any similarly situated coworkers.

The FLSA entitles non-exempt employees to time-and-a-half pay for time worked in a workweek in excess of forty hours.[37] An employer that violates this provision is liable for the unpaid overtime (backpay) and an equal amount as liquidated damages.[38] These liquidated damages are compensatory, not punitive, and compensate an employee for the delay in receiving pay to which he was entitled.[39]

To prevent employers from encouraging employees to waive their right to liquidated damages, settlements or waivers of FLSA claims are generally not enforceable unless approved by a court or supervised by the Department of Labor.[40] However, the Fifth Circuit has ruled that private settlements of FLSA claims are enforceable if the employee receives all the compensation he would be entitled to under the FLSA.[41] Indeed, in *Martin v. Spring Break '83 Productions, L.L.C.*, the Fifth Circuit enforced a private settlement agreement that constituted a compromise over FLSA claims because the settlement resolved a bona fide dispute.[42]

Here, Boat Town willingly paid McNamara's unpaid overtime and liquidated damages shortly after he brought his concerns to the Company's attention. In exchange, he signed an acknowledgement that he had received all the compensation to which he was entitled.[43] Thus, McNamara has acknowledged that he has no claim for unpaid overtime or liquidated damages under the FLSA.

---

[37] 29 U.S.C. § 207.
[38] *Id.* § 216(b).
[39] *See* 29 C.F.R. § 790.22(a).
[40] *See, e.g., Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352–53 (11th Cir. 1982).
[41] *Thomas v. Louisiana*, 534 F.2d 613 (5th Cir. 1976).
[42] *Martin v. Spring Break '83 Productions, L.L.C.*, 688 F.3d 247, 255 (5th Cir. 2012).
[43] App. Ex. A-1.

Similarly, the potential members of McNamara's collective action, those he alleges to be similarly situated, have all accepted payment and settled their claims as well. Under the FLSA, when the DOL supervises payment of unpaid overtime, the employees waive their right to seek those wages and liquidated damages.[44]

To this end, under the DOL's supervision, Boat Town paid all employees that were affected by the incorrect overtime calculations going back two years. Like McNamara, those employees signed acknowledgements after receiving their unpaid overtime and liquidated damages, which were delivered personally by Boat Town management with an apology for the mistake.[45] Thus, McNamara's prospective collective action has no potential members, and his claim for unpaid overtime must fail against all Defendants.

## C. McNamara cannot prove retaliation because he relies solely on timing and speculation.

The FLSA also prohibits employers from retaliating against an employee because the employee has filed a complaint related to the FLSA.[46] When an employee brings a retaliation claim under this section and relies on circumstantial evidence, the *McDonnell Douglas* burden shifting framework applies.[47] Under *McDonnell Douglas*, the plaintiff must establish a *prima facie* case by showing that (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) a causal connection exists between them.[48] If the plaintiff can establish each element, defendant must produce evidence of a legitimate, nonretaliatory reason for the adverse action.[49]

---

[44] 29 U.S.C. § 216(c).
[45] Shook Dep. 59:1–8.
[46] 29 U.S.C. § 215(a)(3).
[47] *See Starnes v. Wallace*, 849 F.3d 627, 631 (5th Cir. 2017).
[48] *Id.* at 631–32.
[49] *Id.* at 632.

At that point, the burden shifts back to the plaintiff, who must show that the offered reason is a pretext for retaliation.[50]

### 1. Boat Town was unaware of McNamara's Alleged DOL complaint when he was laid off, and his internal complaint happened in the too-distant past to support an inference of causation.

The evidence necessary to establish a causal link sufficient to support a *prima facie* case of retaliation is a relatively low hurdle. And, while causation may be established by temporal proximity, the Supreme Court has recognized two important limitations. First, it is axiomatic that the employer must be aware of the plaintiff's protected activity.[51] And second, the temporal proximity must be "very close," generally within months.[52]

In *Clark Cty. Sch. Dist. v. Breeden*, the plaintiff received a right-to-sue letter from the EEOC, and three months later, she filed suit. Ten days after that, her supervisor proposed transferring her, which she claimed was retaliation for filing the lawsuit. The Supreme Court held that neither the notice provided by the right-to-sue letter nor the filing of the lawsuit could establish a *prima facie* case. First, the supervisor was unaware of the suit when she proposed the transfer. And second, the employer's notice of the plaintiff's right-to-sue letter created too weak a causal inference against the fact that her employment continued for three more months.[53]

In this case, the timeline is nearly identical to that in *Breeden*. McNamara reported the overtime pay errors internally three months before the DOL arrived to investigate, and he was not laid off until even later. Moreover, just as the supervisor in *Breeden* had no knowledge of the plaintiff's suit, Boat Town was aware neither that McNamara had complained to the DOL nor that

---

[50] *Id.*

[51] *See Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, (2011) ("It is difficult to see how an employer who does not (or should not) know an employee has made a complaint could discriminate because of that complaint.")

[52] *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (internal quotations omitted)

[53] *Id.*

its investigation related to unpaid overtime.[54] The lack of knowledge that McNamara had allegedly complained to the DOL, and the three-month temporal distance between his internal complaint and the Company's lay-offs of employees, simply cannot establish a causal link strong enough to maintain a *prima facie* claim of retaliation.

### 2. McNamara has no evidence of pretext because Boat Town laid off four employees, including McNamara, at the end of the 2023 boating season.

Even if McNamara's internal complaint could establish enough temporal proximity to support his claim, Boat Town has produced sufficient evidence of a legitimate, nonretaliatory reason for his termination. First, the layoff occurred at the end of the boating season with, which naturally coincides with the reduced demand for boats and boat repairs that Boat Town provides – and a downturn in business.[55] Second, McNamara's selection for the layoff hinged on three key factors: his lack of seniority, his costly accident, and his reputation of poor performance. Consequently, the burden shifts back to McNamara to show that this explanation is a pretext for retaliation.

While temporal proximity alone may be sufficient to meet the low burden of a *prima facie* case, McNamara's ultimate burden is much higher. To show pretext, he must establish that his internal complaint was the ***but-for*** cause of his September 15 layoff.[56] In other words, McNamara must show that if DOL had not visited, he would have still been employed after the layoff. This requires that he introduce some additional evidence—besides timing—that calls into question each reason for his termination offered by Boat Town.[57]

---

[54] App., Ex. E.
[55] Raven Dec. ¶ 9.
[56] *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998) ("[T]he ultimate issue [of retaliation] is whether . . . the adverse employment action would not have occurred 'but-for' the protected activity.")
[57] *Id.*

Yet, McNamara cannot dispute that Boat Town's financial position had declined year-over-year, nor that the layoffs occurred at the end of the company's busy season.[58] He also lacked seniority and admits that he caused a costly accident that damaged company property. These factors would make McNamara a prime candidate for a reduction in force, which would naturally occur when it did—at the end of a boat dealership's seasonal business cycle.[59] Furthermore, Plaintiff was not the only employee laid off that day with the slowdown in business. Boat Town selected three other of its lowest performers in their respective positions.[60]

McNamara also cannot explain why he continued working for Boat Town for nearly three months after he initially made internal complaints of FLSA violations, rather than being terminated immediately. In fact, the only adverse employment action he alleges is his termination.[61] Instead of relying on concrete facts, McNamara relies purely on timing and his own uninformed speculation. He assumes—without evidence—that Boat Town knew that he filed a DOL complaint.[62] His conclusion also blatantly ignores that when DOL conducts a visit, the DOL does not (and did not here) disclose the complainant's identity, the nature of the alleged violation, or even whether the visit was triggered by a complaint.[63] Just as in this case, Boat Town had no knowledge of the basis for or origin of the DOL's investigation.[64] Without additional evidence, no reasonable jury could find that McNamara was laid off in retaliation for his complaints of unpaid overtime.

---

[58] Raven Dec. ¶ 9.
[59] Raven Dec. ¶ 9.
[60] Raven Dec. ¶ 9.
[61] Compl. ¶¶ 25–35, 49.
[62] Pl.'s Dep. 74:18–75:2.
[63] Raven Dec. ¶ 8; App., Ex. E.
[64] Raven Dec. ¶ 8.

**D.    CONCLUSION AND PRAYER**

For all the reasons set forth above, Defendants request that the Court grant their Motion for Summary Judgment in their favor on all of McNamara's claims and for such further relief as the Court deems just and proper.

DATED: November 17, 2025

        Respectfully submitted,

        /s/ *Michael J. DePonte*
        Michael J. DePonte
        Texas Bar No. 24001392
        Michael.DePonte@jacksonlewis.com
        JACKSON LEWIS P.C.
        500 N. Akard St., Suite 2500
        Dallas, Texas 75201
        Phone: (214) 520-2400
        Facsimile: (214) 520-2008

        **ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that by efiling the foregoing document, it has been forwarded to all counsel of record by electronic service, on the 17th day of November, 2025, as follows:

    Austin Kaplan
    Tanner Scheef
    KAPLAN LAW FIRM, PLLC
    2901 Bee Cave Rd., Ste. G
    Austin, Texas 78746
    akaplan@kaplanlawatx.com
    tscheef@kaplanlawatx.com

        By: /s/ *Michael J. DePonte*
            Michael J. DePonte