# Exhibit A

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **KADEN MCNAMARA on Behalf of Himself and Others Similarly Situated,** | § § § | |
| **Plaintiffs,** | § § | |
| v. | § § | CIVIL ACTION NO. 1:24-cv-869-DAE |
| **BOAT TOWN, INC., CLAYTON RAVEN, and CLAY RAVEN,** | § § § § | |
| **Defendants.** | § § | |

## DECLARATION OF CLAYTON RAVEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I, Clayton Raven, declare as follows pursuant to 28 U.S.C. § 1746:

1. My name is Clayton Raven. I submit this declaration in support of Defendants' Motion for Summary Judgment. I am over 21 years of age and am fully competent to make this declaration. I have personal knowledge of all facts recited herein and state that such facts are true and correct.

2. I am an owner and President of Boat Town, Inc. In my capacity as President, I have knowledge of the facts set forth herein based on my personal knowledge and/or review of business and personal records. If called as a witness, I could and would competently testify to the matters stated herein.

3. I, along with my son, Clay Raven, are owners and managers of Boat Town, Inc. We are a family-owned small business that has sold, repaired, and serviced boats and other watercraft in the Austin, Texas, area for more than sixty years. Boat Town's business thrives during the spring and summer when people are making plans to be on the lake. But after Labor Day, when students are back in school, Boat Town's business slows dramatically.

4.  In February 2022, in anticipation of the upcoming season, Boat Town hired the plaintiff, Kaden McNamara, as a Boat Delivery Captain at its Lamar location in Austin, Texas. Unfortunately, within months of starting his work for Boat Town, Plaintiff was involved in an on-the-job accident. Specifically, in May 2022, while driving a boat for the Company, McNamara was involved in an accident in which he drove the boat under an awning and caused almost $56,000 in damage. The Company did not issue any formal disciplinary sanction to McNamara for his plainly negligent actions as we are a family-owned small business and do not give disciplinary write-ups.

5.  More than a year later, on or about June 6, 2023, McNamara informed Boat Town that he believed the Company had been incorrectly calculating his overtime pay. While we were unsure that he was correct, we received his concerns and determined after review that he was correct. Boat Town had been calculating overtime for all hours worked over 80 hours over a two-week period.

6.  That same day, Boat Town acknowledged the error to McNamara and assured him the Company would make it right. Boat Town corrected its method of calculating overtime, and over the next two weeks, we worked with McNamara to determine how much he was owed. On June 27, 2023, Boat Town paid McNamara the backpay *and* liquidated damages to which he was entitled.[1] We also paid him his backpay and liquidated damages at his then-existing wage rate,

---

[1] McNamara initially claimed he was owed 60.223 hours. This amount consisted of (1) his unpaid overtime hours (13.593); (2) time McNamara spent off the clock to calculate his unpaid overtime hours (6.37); (3) other time unaccounted for on his timesheet (23.26 hours); and (4) two paid days off (17 hours). He then discovered he had been paid those two days off, bringing his total down to 42.223 hours. The time spent calculating his unpaid overtime hours was paid on his subsequent paycheck, bringing his payout down to 36.853.

After another slight adjustment, he agreed that he was owed pay for 35.463 hours. This time was paid out at his regular wage rate of $24 per hour, equating to the $851.11 payout (before taxes) that he received on June 27.

Indeed, McNamara had already been paid his regular rate for those "unpaid overtime" hours. He was not paid the extra "half" of the "time-and-a-half" he should have been paid for those hours, an extra $12 per hour. So when Boat Town

**DECLARATION OF CLAYTON RAVEN IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**                          **PAGE 2**

which was greater than his wages when the overtime was worked. We provided McNamara with the updated calculations, which he acknowledged that he received and that the calculations were correct.

7. On or about August 30, 2023, more than two months after Boat Town resolved McNamara's complaint, Boat Town received an email from an investigator with the Department of Labor's Wage and Hour Division (DOL). By then, we had already been in the process of recalculating overtime for the rest of our affected employees.

8. On September 7, 2023, the DOL investigator visited Boat Town's Lamar location to interview witnesses and review a collection of standard payroll documents. No one at Boat Town, certainly no managers or supervisors, knew who had contacted the Department of Labor, and the investigator never informed Boat Town whether the investigation was triggered by a complaint or was simply a routine audit. In cooperation with the DOL and under its supervision, the Company paid all unpaid overtime and liquidated damages owed to everyone identified by the DOL using the DOL's calculations. When their checks were delivered to them personally by Boat Town management, with a personal apology for the mistake, each employee also signed an acknowledgement that they had been paid all wages due.

9. On September 15, 2023, with boating season ending and a downturn in business,[2] Boat Town had no choice but to lay off its lowest performing employees. One of those employees was McNamara. The decision to include McNamara was based on his lack of seniority, his costly accident, and his reputation for poor performance. McNamara had a reputation of laziness, avoiding work, spending an inordinate amount of time on his cell phone, and horsing around in

---

paid out those hours at his regular rate of $24, McNamara ultimately received double pay for those overtime hours, meaning he received his backpay and liquidated damages.

[2] From 2022 to 2023, Boat Town suffered a forty percent (40%) decrease in revenue.

**DECLARATION OF CLAYTON RAVEN IN SUPPORT OF
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**     **PAGE 3**

the workplace. The decision to include McNamara had nothing to do with his complaints regarding his wages. None of the employees who participated in the DOL's visit on September 7 were laid off.

10. It was not until this lawsuit that Boat Town learned that McNamara allegedly called the DOL within hours of bringing this issue with the Company's calculations to our attention in June 2023. In fact, to this day we have not received the DOL's file to confirm whether McNamara actually contacted the DOL to complain about Boat Town's pay practices.

11. As part of my duties as President, I am a Custodian of Records for Boat Town, Inc. Attached hereto, Exhibit A, the Company's Motion for Summary Judgment are business records for Boat Town. These Exhibits are records kept by Boat Town in the regular course of business, and it was the regular course of business of Boat Town for an employee or representative of Boat Town, with knowledge of the act, event, condition, opinion, or diagnosis recorded to make the record or to transmit information thereof to be included in such record; and the record was made at or near the time or reasonable soon thereafter. The records attached hereto are the original or exact duplicates of the original.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Austin, Texas, on this 17th day of November, 2025.

*Clayton Raven*
_____
Clayton Raven