**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| **KADEN MCNAMARA on Behalf of Himself and Others Similarly Situated,** *Plaintiffs,* | § § § § | |
| **v.** | § § | **CIVIL ACTION NO. 1:24-cv-869-DII** |
| **BOAT TOWN, INC, CLAYTON RAVEN, and CLAY RAVEN** *Defendants.* | § § § § § § | **JURY TRIAL DEMANDED** |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

TO THE HONORABLE COURT:

Plaintiff Kaden McNamara respectfully files this Motion for Partial Summary Judgment on his unpaid overtime claim under the Fair Labor Standards Act ("FLSA"), FLSA retaliation claim, and Defendants' defenses, and would respectfully show the Court as follows:

## I.      INTRODUCTION

This case concerns systematic wage theft spanning over two decades. Defendants Boat Town, Inc., Clayton Raven, and Clayton ("Clay") Raven, Jr. (collectively "Defendants") knowingly violated the FLSA's overtime requirements by calculating overtime on an illegal two-week basis rather than the mandated weekly basis. For over 20 years, Defendants paid hourly employees, including Plaintiff McNamara, using a calculation method that only paid overtime if an employee worked more than 80 hours in two weeks, regardless of whether the employee worked over 40 hours in any single week. This practice systematically denied workers overtime compensation they legally earned.

1

When Plaintiff McNamara reported these violations to Defendants and the Department of Labor in June 2023, Defendants retaliated against him by terminating his employment just one week after the Department of Labor investigation began. The undisputed facts establish Defendants' liability for unpaid overtime wages, and Defendants have produced no evidence to support their affirmative defenses. Summary judgment is therefore appropriate on Plaintiff's overtime claim, and Defendants' affirmative defenses should be dismissed for lack of evidentiary support

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Boat Town, Inc. ("Boat Town") is a boat dealership with two locations in Texas, operating as an enterprise engaged in commerce under the FLSA. Deposition of Clayton Raven, Jr. ("Exhibit D") 63:12-64:8; Corporate Representative Deposition ("Exhibit A") 4:20-23. Clayton Raven has the power to hire and fire employees, supervise and control employee work schedules, determine the rate and method of payment for all workers, and maintain records. Ex. A at 40:2-18.

Defendant Clay Raven, Jr. serves as the General Manager of Boat Town's Austin store. Ex. A at 38:24-25. He has the power to hire and fire employees, supervise and control employee work schedules, determine the rate and method of payment for all workers, and maintain records. Ex. A at 40:19-42:16.

Plaintiff Kaden McNamara began working for Boat Town as a Boat Delivery Captain in February 2022. Ex. A at 28:2-13. Plaintiff made an hourly rate that gradually increased during his tenure. Ex. A at 47:5-15 (started at $18/hour, increased to $22/hour); *See* Boat Town Payroll Add/Change Form ("Exhibit I") (pay increased from $22/hour to $24/hour on March 1, 2023). Plaintiff regularly worked more than 40 hours per work week, typically between 40-48 hours per week during peak season. *See generally* Exhibit E (Timesheets of Kaden McNamara).

For over 15 years, Boat Town calculated overtime based on whether an employee worked more than 80 hours in two weeks, rather than whether the employee worked over 40 hours in any single workweek. Ex. A at 56:20-57:1; Deposition of Patti Shook ("Exhibit C") at 20:13-21. This two-week calculation method meant that if an employee worked 45 hours in one week and 35 hours the next week (totaling 80 hours), the employee would not receive overtime pay for the 5 hours worked over 40 in the first week. Ex. A at 130:2-22. Boat Town tracked employee hours daily using Lightspeed software, then Patti Shook would print out the time sheets and manually enter the times into ADP. *See* Ex. A at 131:22-132:20; Ex. C at 22:4-14. Shook manually input in 80 hours on ADP and then would separately input hours over 80 into the overtime column. Ex. C at 28:24-29:17. Shook described her use of the overtime calculation process at Boat Town as "monkey see monkey do." Ex. C at 29:11-15. Shook alleges she only learned the two-week basis was incorrect when McNamara told her. Ex. C at 23:15-17. Shook never looked up how to properly calculate overtime until McNamara raised the issue. Ex. C at 23:18-23. Shook assumed the method was correct, but never independently verified whether it was. Ex. C at 34:23-25. She admitted she should not have assumed the method was correct without first verifying it was. *Id*.

Defendants' Corporate Representative testified he did not know what steps, if any, Boat Town took to ensure it complied with the FLSA. Ex. A at 32:21-33:23. No other employee had raised issues about unpaid overtime or FLSA violations before Plaintiff McNamara. Ex. A at 34:6-12; 67:21-68:22. Boat Town claims it had no knowledge that the two-week approach was unlawful, but its own Employee Handbook states: "You will be paid overtime if you work more than 40 hours between Wednesday and Tuesday." Defendant's Answer to Plaintiff's Original Petition, ¶ 11; Ex. A at 31:17-32:4; *see* Exhibit G (Boat Town Inc. Employee Handbook), BT000001-12 at BT000005.

On or about June 6, 2023[1], Plaintiff McNamara approached Controller Patti Shook and his supervisor, Geromi Trudeau, expressing his concern that Boat Town was not properly paying employees their overtime wages. Boat Town management knew that McNamara was claiming that Boat Town was violating federal law. Ex. A at 53:23-54:11; Ex. C. at 36:24-37:4 & 44:18-45:3. On or about June 6, 2023, Plaintiff also filed a report of overtime violations with the U.S. Department of Labor. *See* Department of Labor Confirmation Email ("Exhibit J").

Defendants changed their overtime calculation method to comply with the FLSA only after Mr. McNamara's report and after the Department of Labor investigation. Ex. A at 131:10-13. On June 27, 2023, Defendant Boat Town paid Plaintiff $741.10 ($851.04 less taxes) in illegally withheld overtime payment. *See* ADP Statement ("Exhibit K"). Defendant Boat Town did not pay Plaintiff liquidated damages based on the overtime wages withheld. *Id*.

On June 27, 2023, Defendant Boat Town required Plaintiff to sign a settlement agreement in order to collect the illegally withheld wages. *See* Acknowledgement ("Exhibit F"). This settlement agreement stated that Plaintiff "received all compensation, wages, and other amounts" to which Plaintiff was entitled from the past two years before the agreement. *Id*.

Upon learning of the violations from Plaintiff McNamara, the Department of Labor contacted Boat Town via email on August 22, 2023. Ex. C 47:24-48:25; *see* Department of Labor Email to Boat Town ("Exhibit L"). Defendants confirmed with the Department of Labor that their overtime calculation method was incorrect. Ex. A at 53:7-10. On or about August 30, 2023, the Department of Labor came to Boat Town to investigate Boat Town's compliance with the FLSA. Ex. L. On or about September 7th or 8th,[2] the Department of Labor came to Boat Town for a second inspection. Ex. B at 69:12-70:3; Ex. C at 50:22-24 & 59:14-18.

---

[1] Defense counsel agreed to stipulate that June 6, 2023 was the correct date. See Ex. A at 51:18-52:3.
[2] Plaintiff can only approximate dates due to the fact the Department of Labor has not replied to its record request.

**On September 15, 2023, just approximately one week after the Department of Labor visited Boat Town and approximately three months after Plaintiff reported the violations, Defendants terminated Plaintiff's employment. Ex. A at 81:14-22; Ex. E pg. 10.**

## III.    STANDARD FOR SUMMARY JUDGMENT

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met this burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing Fed. Rule Civ. Proc. 56(e)). The non-moving party must do more than simply show that there is some doubt as to the material facts; rather, it must produce specific facts showing a genuine issue for trial. *Id*. at 586-87.

The Court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the non-moving party may not rest upon mere allegations or denials in its pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248.

## IV.    ARGUMENT

Plaintiff moves for summary judgment on three grounds. First, Plaintiff moves for summary judgment on his unpaid overtime claims under 29 U.S.C. § 207(a)(1). Second, Plaintiff

moves for partial summary judgment on two elements of his FLSA retaliation claim. Finally, Plaintiff moves for summary judgment on the defenses asserted by Defendant.

**A.    Plaintiff is Entitled to Summary Judgment on His FLSA Overtime Claim.**

**1.    Defendant Boat Town is an Enterprise Covered by the FLSA.**

The FLSA applies to any enterprise engaged in commerce or in the production of goods for commerce that has annual gross volume of sales of not less than $500,000. 29 U.S.C. § 203(s)(1)(A)(ii). Boat Town is a boat dealership with two locations that engages in interstate commerce by selling boats and boat-related products that move in interstate commerce. Ex. D at 63:12-64:8. Defendant Boat Town's annual gross sales exceed $500,000. Ex. A at 43:5-11; Ex. D at 63:12-17. Because Boat Town engaged in interstate commerce and has an annual gross sales volume of above $500,000, Boat Town is an enterprise covered by the FLSA. Accordingly, Boat Town is subject to the FLSA's overtime requirements.

**2.    Defendants Clayton Raven, Sr. and Clay Raven, Jr. are Individually Liable Under the FLSA.**

Under the FLSA, an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts apply the "economic reality test" to determine whether an individual qualifies as an employer, considering factors such as: (a) whether the individual had the power to hire and fire employees; (b) whether the individual supervised and controlled employee work schedules or conditions of employment; (c) whether the individual determined the rate and method of payment; and (d) whether the individual maintained employment records. *Gray v. Powers*, 673 F.3d 352, 355 (5th Cir. 2012).

The undisputed evidence establishes that Defendant Clayton Raven, Sr. meets every factor for individual liability. Defendant Raven Sr. testified that he has the power to hire and fire

employees at Boat Town; the power to supervise and control employee work schedules and conditions of employment; determine the rate and method of payment for all workers; and maintain employee records or decide how they are maintained. Ex. A at 40:2-7 (hire and fire); 40:8-11 (supervise and control); 40:12-15 (rate and method of pay); 40:16-18 (maintain employee records). Defendant Raven Sr. admits that he, along with members of Boat Town's accounting staff and Patti Shook, set up the payment method. *Id*. at 32:5-20. When confronted with the overtime violations, Clayton Raven was personally involved in the company's response, including interactions with the Department of Labor. Ex. A at 66:16-25. Because Defendant Raven, Sr. meets every element of the economic realities test, he is individually liable as an employer under the FLSA. *Gray*, 673 F.3d at 355.

The same analysis applies to Defendant Clay Raven, Jr. Defendant Raven, Jr. serves as General Manager of the Austin store where Plaintiff worked. Ex. A at 38:24-25. Defendant Raven, Jr. had the power to hire and fire; supervise or control employee's work schedules and conditions of employment; determine the rate or method of employee pay; and with authority to control and maintain employee records. Ex. A at 40:19-41-7 (hire and fire); 41:8-11 (supervise and control); 41:14-19 (rate and method of pay); 41:22-42:16 (maintain records). Because Defendant Raven, Jr. meets every element of the economic realities test, he is individually liable as an employer under the FLSA. *Gray*, 673 F.3d at 355.

### 3.    Plaintiff Worked Overtime

The undisputed facts establish that Plaintiff regularly worked more than 40 hours per week. *See generally* Ex. E. Rather than paying overtime for hours worked over 40 in any single week, Defendants only paid overtime when employees exceeded 80 hours in a two-week period. Ex. A at 130:2-22; Ex. C at 20:13-16. This practice directly violates 29 U.S.C. § 207(a)(1) ("Except as

otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.**") (emphasis added). Under Defendants' two-week calculation method, an employee who worked 45 hours in week one and 35 hours in week two would receive straight-time pay for all 80 hours, despite having worked 5 hours of overtime in week one. Ex. A at 130:2-22. This is precisely what happened to Plaintiff McNamara throughout his employment.

4.     **Plaintiff Has Not Waived His Claim to Liquidated Damages Despite Signing a Release.**

Defendants have argued that Plaintiff has no remaining damages because they paid Plaintiff his unpaid overtime wages after he raised the issue and because he signed an Acknowledgement waiving his claims, but that is in direct contradiction to Supreme Court precedent.

The Supreme Court  held in a seminal 1945 case that an employee may pursue unpaid liquidated damages based on a FLSA claim even if the underlying unpaid wages were already repaid.  *See generally Brooklyn Savings Bank v. O'Neil*. 324 U.S. 697, 706 (1945).  There, the Court stated, "...Congress did not intend that an employee should be allowed to waive his right to liquidated damages." *Id*. at 706.  This holding permits Plaintiff McNamara to pursue his alleged unpaid liquidated damages despite Defendants having paid him his unpaid overtime wages.

In *Brooklyn Savings Bank,* the Court held that a worker could pursue a case for liquidated damages even if the worker had signed a waiver of his claims after his employer paid him previously unpaid overtime wages. *See generally id*.  In that case, the defendant paid the plaintiff

unpaid overtime wages in exchange for a release but failed to pay any liquidated damages at that time. *Id*. at 700. When the plaintiff later sued to recover the liquidated damages and attorney's fees, the Court allowed his case to proceed because (1) liquidated damages are statutorily mandatory under most circumstances under the Fair Labor Standards Act; and (2) the Court found that it is against public policy to permit a worker to waive his right to liquidated damages without there being a bona fide dispute. *Id*. At 710 ("Sections 7(a) and 16(b) are mandatory in form"); *id*. ("Knowledge on the part of the employer that he cannot escape liability for liquidated damages by taking advantage of the needs of his employees tends to insure compliance in the first place. To allow contracts for waiver of liquidated damages approximates situations where courts have uniformly held that contracts tending to encourage violation of laws are void as contrary to public policy."). Importantly, *Brooklyn Savings Bank* is a case about minimum wage violations, but the reasoning applies broadly to the FLSA, which includes overtime claims. Accordingly, a plaintiff has the right to pursue liquidated damages in court even if the foundational unpaid wages have been repaid. *Id*. at 711. In short, a defendant owes liquidated damages if it fails to pay overtime properly, even if it later corrects its illegal action by paying the unpaid wages without paying liquidated damages. *Id* ("[i]t provides absolutely that the employer shall be liable for liquidated damages in an amount equal to minimum wages overdue; liability is not conditioned on default at the time suit is begun.").

As in *Brooklyn Savings Bank*, here we have a scenario where the Plaintiff signed a waiver of his rights following a delayed payment of unpaid wages without an equivalent payment of liquidated damages. Because Plaintiff did not receive the liquidated damages he is entitled to, and because he is not permitted to waive his right to liquidated damages without a bona fide dispute

existing, it is permissible for him to seek those wages in court. It is the burden of the employer to demonstrate why he is not entitled to pursue liquidated damages.

Waiver is a recognized defense under the FLSA only if the employee has accepted full payment of unpaid wages, as supervised by the Secretary of Labor or if an employee accepts payment under a court-approved settlement. *Coffin v. Blessey Marine Services, Inc.*, No. H-11-0214, 2011 WL 2193378, at *1 (S.D. Tex. June 6, 2011). Neither situation exists here. Because "the waiver defense is unavailable without supervision by the Secretary of Labor or the Court," Defendants are not entitled to a waiver defense. *Portillo*, 793 F.App'x. at 259. Accordingly, Plaintiff McNamara is entitled to pursue his claim for liquidated damages despite Defendants having paid him the underlying withheld overtime wages.

### 5.    Plaintiff is Entitled to Liquidated Damages and Attorney's Fees[3]

When an employer violates the FLSA's overtime provisions, the employee is entitled to "an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Although the language of § 216(b) is mandatory, Congress added a provision that grants district courts the discretion not to award liquidated damages if the employer proves (1) "that the act or omission giving rise to such action was in good faith" and (2) "that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260; *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468 (5th Cir. 1979). That is not the case here because Defendants never attempted to ensure compliance with the FLSA.

The burden of proof for this two-prong test to overcome liquidated damages lies solely on the employer. 29 U.S.C. § 260 ("if the employer shows to the satisfaction of the Court"); *Carmack*, 321 F. Supp. 3d at 707; *Thomas v. State of Louisiana*, 348 F.Supp. 792, 796 (W.D. La. 1972). The

---

[3] This section also addresses Defendants' defense of good faith, as it directly relates to the issue of liquidated damages.

employer bears "the plain and substantial burden of persuading the court by proof that [its] failure to obey the statute was both in good faith and was predicated upon such reasonable grounds that it would be unfair to impose upon [it] more than a compensatory verdict." *Barcellona*, 597 F.2d at 468. The burden is a difficult one to meet; "[d]ouble damages are the norm, single damages the exception." *Carmack*, 321 F. Supp. 3d at 707 (*quoting Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 310 (7th Cir. 1986)).

The defense requires plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it. *Brock v. Wilamowsky*, 833 F.2d 11, 19 (2d Cir. 1987) (*citing Williams v. Tri-County Growers, Inc*., 747 F.2d 121, 129 (3d Cir. 1984)); *Barcellona*, 597 F.2d at 468-69. "If an employer suspect[s] that [it is] out of compliance with the FLSA, it cannot act in good faith." *Steele v. Leasing Enters., Ltd.*, 826 F.3d 237, 246 (5th Cir. 2016) (*citing Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1042 (5th Cir. 1999)) (alterations in original).  As the Fifth Circuit has repeatedly held, this burden is "substantial." *Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 267 (5th Cir. 1998); *Singer v. City of Waco, Tex*., 324 F.3d 813, 822 (5th Cir. 2003). Even if the employer carries its burden, the court retains the discretion to award liquidated damages. *Thomas*, 348 F.Supp. at 796.

Good faith requires more than ignorance of the prevailing law or uncertainty about its development. *Ferguson v. Texas Farm Bureau*, No. 617CV00111ADAJCM, 2021 WL 2349340, at *12 (W.D. Tex. May 19, 2021), *report and recommendation adopted,* No. 6-17-CV-00111-ADA, 2021 WL 7906826 (W.D. Tex. June 22, 2021,) (citing *Reich v. S. New England Telecommunications Corp.*, 121 F. 3d 58, 71 (2d Cir. 1997)). Good faith is a subjective component under which the employer must show that it "had an honest intention to ascertain what the Act requires and to act in accordance with it." *Brantley v. Inspectorate Am. Corp.*, 821 F. Supp. 2d 879

(S.D. Tex. 2011) (*quoting Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991) (internal citations omitted)). An employer must take active steps to ascertain the dictates of the FLSA. *Id.* (*citing Reich*, 121 F. 3d at 71). "[G]ood faith requires some duty to investigate potential liability under the FLSA." *Barcellona*, 597 F. 2d at 469; *Ferguson v. Texas Farm Bureau*, No. 617CV00111ADAJCM, 2021 WL 2349340, at *12 (W.D. Tex. May 19, 2021), report and recommendation adopted, No. 6-17-CV-00111-ADA, 2021 WL 7906826 (W.D. Tex. June 22, 2021).

Defendants attempt to show that they acted in good faith by simply asserting they thought they were correct. Ex. A at 31:17-32:4; Ex. C at 34:24-25. But this assertion is contradicted by Defendant Boat Town's own Employee Handbook, which states: "You will be paid overtime if you work more than 40 hours between Wednesday and Tuesday." See Exhibit G (Boat Town Inc. Employee Handbook), BT000001-12 at BT000005. Defendants' Corporate Representative acknowledge under oath that this was Boat Town's policy written and implemented in 2021. Ex. A at 124:14-22. Boat Town's own Handbook outlined the correct method of calculating overtime, yet the company failed to follow the correct, lawful way to pay its employees for overtime wages.

Even ignoring the contradiction in the handbook, the claim that the Defendants did not know they were wrong does not satisfy the burden of the good faith defense. The FLSA contemplates an employer taking active steps to ensure compliance, not simply assuming they are correct and never checking. *See Ferguson v. Texas Farm Bureau*, No. 617CV00111ADAJCM, 2021 WL 2349340, at *12 (W.D. Tex. May 19, 2021), *report and recommendation adopted,* No. 6-17-CV-00111-ADA, 2021 WL 7906826 (W.D. Tex. June 22, 2021,) (citing *Reich v. S. New England Telecommunications Corp.*, 121 F. 3d 58, 71 (2d Cir. 1997)). Because "[a]pathetic ignorance is never the basis of a reasonable belief," Defendants did not act in good faith as a matter

of law. *Barcellona*, 597 F. 2d at 469. In order to believe something, it would seem necessary to know of something to believe in. "A good heart but an empty head does not produce a defense." *Ferguson*, No. 617CV00111ADAJCM, 2021 WL 2349340, at *13 (*quoting Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986)). Courts have repeatedly held that this basic requirement is so well-known that employers cannot claim good faith ignorance. *See Yi v. Sterling Collision Ctrs., Inc*., 480 F.3d 505, 509 (7th Cir. 2007) ("The employer's duty to pay time and a half for overtime is not obscure."). Rather than make any inquiry into the FLSA, Defendants chose to stay ignorant of their requirements under the law; that is not enough to meet their substantial burden of good faith.

The evidence establishes, without dispute, that: (1) Defendants are covered employers; (2) Plaintiff worked over 40 hours per week without proper compensation; (3) Defendants failed to timely pay overtime for those hours due to their illegal two-week calculation method; (4) no valid waiver exists; and (5) Defendants cannot establish good faith. These undisputed facts entitle Plaintiff summary judgment on his unpaid overtime claim, including liquidated damages and attorney's fees costs.

**B.    Plaintiff is Entitled to Partial Summary Judgment on His FLSA Retaliation Claim**

Under the FLSA's retaliation prohibitions, employers may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]...." 29 U.S.C. § 215(a)(3). To succeed on a claim of retaliation under the FLSA, a plaintiff must make "a prima facie showing of: (1) participation in a protected activity under the FLSA; (2) an adverse employment action; and (3) a causal link between the activity and the adverse action." *Starnes v. Wallace*, 849 F.3d 627, 631-32 (5th Cir. 2017). Here, though a genuine issue of material fact exists

as to the existence of a causal link, it is undisputed that Plaintiff (1) participated in a protected activity under the FLSA and (2) suffered an adverse employment action.

### 1. Plaintiff Engaged in Protected Activity

"To engage in a protected activity" under the FLSA, a "plaintiff must make a 'complaint.'" *Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 626 (5th Circ. 2008). Here, the undisputed facts show that Plaintiff McNamara made multiple complaints to Defendants, representatives thereof, and the U.S. Department of Labor. See Ex. C at 32:11-36:18; Ex. D at 17:25-19:8; Deposition of Kaden McNamara ("Exhibit B") 35:2-6.

> To fall within the scope of the antiretaliation provision, a complaint must be sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection. This standard can be met … by oral complaints, as well as by written ones.

*Kasten v. Saint-Gobain Performance Plastics Corp.*, 561 U.S. 1, 14, 131 S. Ct. 1325, 179 L. E. 2d 379 (2011).

While not "every abstract grumbling or vague expression of discontent [constitutes] an actionable complaint," courts have held that "[a]n 'informal complaint to [an] employer may constitute protected activity." *Rodriguez v. City of Corpus Christi*, 129 F.4th 890, 898 (5th Cir. 2025) (*quoting Hagan*, 529 F.3d 617, 625-26 (internal quotation marks omitted)). Thus, though Plaintiff made no formal written reports to Boat Town, no such report is required in order to engage in protected activity. *Id*. Plaintiff here made oral complaints regarding Boat Town's failure to properly pay its employees to (a) his then-supervisor, Geromi Trudeau, (b) Defendants' then-Controller, Patti Shook, (c) Defendant Clayton Raven, Sr., and (d) Defendant Clay Raven Jr. *See* Ex. C at 32:11-36:18; Ex. D at 17:25-19:8. Plaintiff also discussed aspects of his complaints in writing via email with the Defendants and further complained in writing to the U.S. Department

of Labor. *See* Ex. B at 35:2-6; Ex. J. The substance of Plaintiff's complaints, that Defendant Boat Town was violating 29 U.S.C. § 207(a)(1) by paying overtime only when employees exceeded 80 hours in a two-week period, is a clear assertion of Plaintiff's and his coworkers' rights under the FLSA. On multiple occasions, Plaintiff discussed these violations, requested that Defendants remedy them, and provided calculations regarding corrective actions in clear assertions of his and his then-coworkers' rights under the FLSA. Ex. D at 17:25-19:8; Ex. B at 35:2-6; *see* Ex. C 32:11-36:18.

Courts have also regularly held that "such an assertion of rights requires that an employee step outside of his normal job role and assert a right adverse to the company." *Starnes*, 849 F.3d at 632 (*citing Hagan*, 529 F.3d at 627). Defendants do not dispute that Plaintiff, a boat delivery captain (responsible for picking up and delivering boats, assisting Defendants' sales team with demonstrations, teaching clients how to drive boats, and other similar tasks), was stepping outside of his job's normal role when he reported Defendant's failure to properly pay overtime wages both to his supervisors and the U.S. Department of Labor. *See* Ex. A at 44:16-22. Thus, in reporting Defendants' violations of the FLSA to Defendants, representatives thereof, and the Department of Labor, Plaintiff participated in protected activity on each occasion.

## 2. Defendants' Termination of Plaintiff Constituted an Adverse Employment Action Under the FLSA

The primary adverse employment action contemplated by the anti-retaliation provision of the FLSA is discharge of employment. *See* 29 U.S.C. § 215(a)(3). It is undisputed that Defendants terminated Plaintiff's employment. As per Plaintiff's timecard data, his employ with Defendants ended on September 15, 2023. Ex. E at BT000043. This occurred after Defendant Clay Raven "let [Plaintiff] go" during a recorded, in-person meeting on the same date. *See* Ex. A 43:25-44:9.

Defendants further do not allege that Plaintiff voluntarily resigned or quit his employment. As such, there is no genuine dispute of material fact as to whether Plaintiff suffered an adverse employment action

## C.    Plaintiff is Entitled to Summary Judgment on All of Defendants' Defenses

After adequate time for discovery, Defendants have failed to produce evidence supporting their affirmative defenses. Plaintiff is therefore entitled to summary judgment dismissing these defenses.

### 1.    Waiver, Accord and Satisfaction, and *De Minimis*

Defendant asserts the defenses of waiver and accord and satisfaction. *See* Exhibit H, Defendant's Answer to Plaintiff's Original Petition, ¶ 2 & 14. The Supreme Court has held that "the purposes of the Act require that it be applied even to those who would decline its protections." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 302, 105 S. Ct. 1953, 85 L.Ed.2d 278 (1985). In other words, waiver is generally inapplicable in FLSA cases. *Id*.; *Ferguson*, No. 617CV00111ADAJCM, 2021 WL 2349340 at 15.

Defendants have produced no evidence that they paid Plaintiff all sums legally due. To the contrary, the undisputed evidence establishes that while Defendants eventually paid some back wages, these payments did not include liquidated damages as required by 29 U.S.C. § 216(b). Plaintiff is entitled to additional relief including liquidated damages, prejudgment interest, attorneys' fees, and costs—none of which have been paid. This defense does not address Plaintiff's separate retaliation claim, for which he seeks back pay, front pay, compensatory damages, and punitive damages.

Accord and satisfaction requires proof of: (1) a bona fide dispute; (2) a payment tendered in full satisfaction; and (3) acceptance of that payment by the creditor. *Fischbach and Moore, Inc.*

*v. Cajun Elec. Power Co-op., Inc.*, 799 F.2d 194, 198 (5th Cir. 1986). While Plaintiff does not dispute that Defendants partially paid Plaintiff, this payment was not in full accord and satisfaction of Plaintiff's claims. Defendants never tendered payment representing full satisfaction of all claims, including liquidated damages, prejudgment interest, attorneys' fees, or retaliation damages. The de minimis doctrine applies only to "insubstantial or insignificant" periods of time that are administratively difficult to record. *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). Defendants have produced no evidence that: Any specific time period qualifies as de minimis; The overtime hours at issue were administratively difficult to record; or the amounts involved were insubstantial.

To the contrary, the undisputed evidence establishes that Plaintiff regularly worked 2-8 hours of overtime per week during peak season. These are not insubstantial amounts. See Ex. E. Defendants tracked all employee hours daily using Lightspeed software. See Ex. A at 131:22-132:20; Ex. C at 22:4-14. There was no administrative difficulty in recording the exact hours worked. The issue is not about small amounts of unrecorded time, but rather Defendants' deliberate use of an illegal calculation method that systematically denied overtime pay for hours that were fully recorded.

The de minimis doctrine does not apply to this case, and Defendants have failed to produce any evidence supporting its application. This defense should be dismissed.

### 2.    Good Faith

As discussed at length above in Section IV(A)(v), the Defendants cannot meet their substantial burden of proving good faith. Because they cannot prove that there is a genuine issue of fact for trial on the defense of good faith, this defense should be dismissed.

### 3.    Miscellaneous Defenses

There are several defenses that can be quickly addressed.

First, Defendant raises the Portal-to-Portal Act in its Answer. Ex. H, ¶ 4. During the deposition of Clayton Raven, defense counsel withdrew this affirmative defense. *See* Raven Dep. at 31:12-13 ("We're withdrawing that affirmative defense."). Accordingly, this defense is no longer at issue and should be dismissed.

Second, Defendant raises the defense of setoff, offset, and/or recoupment. Ex. H, ¶ 7. The Fifth Circuit has been hesitant to permit an employer to assert the affirmative defense of set-off in FLSA suits for money the employer claims the employee owes it, or for damages the employee's tortious conduct allegedly caused. *Martin v. PepsiAmericas, Inc.*, 628 F.3d 738,740-731 (5th Cir. 2010). As the Fifth Circuit stated in *Martin*, "We continue to look with disfavor on set-offs unless the money being set-off can be considered wages that the employer pre-paid to the plaintiff-employee." *Id*. Without specific factual allegations or evidence of amounts owed by Plaintiff to Defendants, this defense is conclusory and should be dismissed.

Third, Defendant raises the defense of estoppel. Ex. H, ¶ 12. Estoppel provides only a narrow defense to FLSA claims and some courts have noted that it is generally unavailable. *Portillo v. Permanent Workers, L.L.C.*, 793 Fed. Appx. 255, 259 (5th Cir. 2019). The only circumstances in which the Fifth Circuit has estopped plaintiff from recovering compensation in an FLSA claim is when the plaintiff intentionally underreported hours to her employer. *Brumbelow v. Quality Mills, Inc.*, 462 F. 2d 1324, 1327 (5th Cir. 1972). Courts in this circuit have not extended *Brumbelow* beyond circumstances in which an employer underpays as a result of good-faith reliance on misreported hours. *Portillo*, 793 F. App'x. at 259. Because there has been no evidence of misreported hours, the estoppel defense is unavailable to Defendants here and should be dismissed.

Fourth, Defendant asserts a Statute of Limitations defense. Plaintiff filed this action in June 2024 for violations occurring from February 2022 through September 2023—well within the three-year period. Even under the two-year limitations period for non-willful violations, Plaintiff's claims would be timely. Defendants have produced no evidence showing that any of Plaintiff's claims are time-barred. This defense should be dismissed.

Fifth, though Defendants have not affirmatively raised the defense that Plaintiff failed to mitigate his damages, Plaintiff requests that this Court find, as a matter of law, that Plaintiff has sought to mitigate his damages.

Defendant bears the burden to plead and prove the affirmative defense of failure to mitigate. *Sparks v. Griffin*, 460 F.2d 433, 443 (5th Cir. 1972). To prevail on a failure to mitigate claim, the defendant carries the burden of both production and persuasion to prove both required elements: (1) that the plaintiff failed to use reasonable care and diligence to obtain "substantially equivalent" employment, and (2) that there were "substantially equivalent" jobs available to which plaintiff could have applied but did not even though he was qualified. *Id*. "Substantially equivalent" employment is defined as "'employment which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the [plaintiff was] discriminatorily terminated.'" *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir. 1996) (*quoting Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir. 1990).

With respect to the first element, Defendant cannot prove Plaintiff failed to use reasonable care and diligence to find other employment after Defendants fired him. Plaintiff applied to jobs within a 90-mile radius. Ex. B at 38:10-16. Plaintiff has held 2 jobs since Defendants terminated him, though he left both for reasons unrelated to his performance. The first was a contract job that

ended. Ex. B at 30:10-31:2. The second was a job at a business that laid off 33-37% of its workforce, including Plaintiff. Ex. B at 33:18-20.

With respect to the second element, Defendants cannot show there were substantially equivalent jobs available to Plaintiff to which he did not apply.

Because Defendant cannot meet its evidentiary burden for a failure to mitigate defense, summary judgment should be granted

## V.    CONCLUSION

For the foregoing reasons, the undisputed material facts establish that Plaintiff is entitled to judgment as a matter of law on Plaintiff's claim for unpaid overtime, partial summary judgment on Plaintiff's retaliation claim, and summary judgment on all of Defendants' defenses. Accordingly, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Summary Judgment, together with such other relief as this Court deems just and proper.

Respectfully Submitted,
*/s/ Tanner Scheef*
Tanner Scheef
Texas Bar No. 24129188
tscheef@kaplanlawatx.com
Austin Kaplan
Texas Bar No. 24072176
akaplan@kaplanlawatx.com

**KAPLAN LAW FIRM, PLLC**
2901 Bee Caves Rd., Ste. G
Austin, Texas 78746
P: (512) 814-8522
F: (512) 692-2788

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing Motion

for Summary Judgment was served upon all parties of record by the method indicated below:

***Via ECF:***
Michael DePonte
Jackson Lewis P.C.
500 N. Akard Street
Suite 2500
Dallas, TX 75201
(972) 728-3307
Michael.DePonte@jacksonlewis.com

**COUNSEL FOR DEFENDANTS**

*/s/Tanner Scheef*
Tanner Scheef